## McPherson v. Connellsville Joint School Board

*Nathan Agron* and *Edward Friedman*, for appellant. *Anthony J. Cavalcante*, for appellee.

SWOPE, P. J., November 18, 1963. — Connellsville Joint School Board takes this appeal from the order of

the Pennsylvania Human Relations Commission, dated June 26, 1962, made pursuant to section 9 of the Pennsylvania Fair Employment Practice Act of October 27, 1955, P. L. 744, as amended, 43 PS §959.

Subsequent to the filing of a formal complaint and hearing thereon, the commission, having first found that the respondent board had refused to hire complainant, Jane McPherson, as a teacher because of her race, in violation of section 5(a) of the act of 1955, ordered the board: (1) To cease and desist from its refusal to hire the complainant; (2) to hire complainant at a salary of $4,000 per year as soon as the next appropriate teaching vacancy occurred; and (3) to carry out further actions intended to effectuate the provisions of the Human Relations Act.

It has been fairly established that the findings upon which an administrative agency, such as the Pennsylvania Human Relations Commission, bases its orders must be supported by "substantial evidence"; i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. More is required than a mere scintilla of evidence or a simple suspicion of the existence of the fact to be established. See Pennsylvania State Board of Medical Education and Licensure v. Schireson, 360 Pa. 129, 61 A. 2d 343 (1948); State Board of Medical Education and Licensure v. Harney, 60 Dauph. 204; Erie Resistor Corporation v. Unemployment Compensation Board of Review, 194 Pa. Superior Ct. 278, 166 A. 2d 96 (1960); Pennsylvania Insurance Department v. Philadelphia, 75 Dauph. 256 (1962), affirmed 196 Pa. Superior Ct. 221, 173 A. 2d 811.

Hearsay or rumor does not constitute substantial evidence: Consolidated Edison Co. v. National Labor Relations Board, 305 U. S. 197, 59 S. Ct. 206.

While section 9 of the Human Relations Act relieves the commission of complying with the strict rules of

evidence in proceedings before it, it is not thereby relieved from the necessity of basing its findings on evidence having reasonable probative force. The rule of substantial evidence is one of fundamental importance and is the dividing line between law and arbitrary power. See Pennsylvania Real Estate Commission ex rel. Pohl v. Radnor Real Estate, Inc., 75 Dauph. 180 (1960).

We have carefully reviewed the entire record before the commission in light of the above requirements and conclude that in the present state of the record, the findings of the commission cannot be sustained, because they are based almost entirely upon hearsay and rumor and, therefore, fail to meet the test of substantiality.

From the record, it would appear that Mrs. McPherson filed a formal application for employment as a teacher of English with the Connellsville Joint School Committee, acting in behalf of the Connellsville Joint School Board with regard to the employment of teachers. Thereafter, Mrs. McPherson was interviewed by the Personnel Committee of the Joint Committee, in accordance with its established practice. Following her application and interview, a teaching vacancy in the English Department was filled by someone other than herself. Learning subsequently of another vacancy which was about to occur, Mrs. McPherson, by a letter to the Joint School Committee, renewed her initial application. Once again Mrs. McPherson was passed over by the Personnel Committee, which recommended a person other than herself for the consideration of the full Joint School Committee. This person, also, was eventually hired.

There would seem to be no question that Mrs. McPherson was admirably qualified for either of the teaching vacancies to which her application applied. It would also appear that her qualifications were far superior to either of the persons who were hired to

fill the vacancies. All other things being equal, we could readily agree that the fact that Mrs. McPherson had been refused employment in favor of other applicants far less qualified than herself would tend most strongly to raise the inference that she had been discriminated against because of her race.

It would appear, however, all other things are not equal. The record establishes that there are two primary considerations which affect the decisions of the Personnel Committee and ultimately the Joint School Committee of the board. These are: (1) The qualifications of the applicants; and, of at least equal importance, (2) the amount of salary which they will require before accepting the position. Mrs. McPherson's superior qualifications, at the same time that they enabled her to meet the first requirement, also put her at a disadvantage with regard to the second. At the time of filing her application for employment, after consultation between herself and a representative of the Joint School Committee, it was decided and agreed upon by her that her qualifications would put her in the category of teachers requiring a salary of between $5,000 and $6,500. In light of this, Mrs. McPherson advised that she would be willing to accept a $5,200 salary. The first vacancy following Mrs. McPherson's application and interview was filled at a salary of $3,600 per annum. Concededly, an applicant with substantially less qualification was given the appointment, but at a substantially lower salary than that which Mrs. McPherson's application indicated would have been required in order for her to fill the position.

Following the filling of the first vacancy by someone other than herself, Mrs. McPherson wrote to the Joint School Committee advising them that she would be willing to accept less than $5,200 in order to secure a position as a teacher of English. She did not make any specific offer as to a lower figure however, leaving the

matter for possible future negotiation. Mrs. McPherson did finally communicate a firm but informal offer to accept employment at a figure of $4,200 to an individual member of the Joint School Committee. This offer was not communicated either to the Personnel Committee or to the Joint School Committee until the evening at which the recommendation of the Personnel Committee that a person other than Mrs. McPherson be hired to fill the second vacancy at $4,000 was under consideration. It was at this meeting that the member of the Joint School Committee seeking to act in behalf of Mrs. McPherson was properly ruled out of order when she sought to have Mrs. McPherson's name placed into consideration, a request which was extraordinary in that it ignored the established practice and procedure for bringing the name of an applicant for teacher employment before the full Joint School Committee for consideration and vote.

To this point, except for the fact that Mrs. McPherson's race was generally known to all concerned, there is absolutely nothing in the record which would indicate that her application for employment was refused on any basis other than that there were other applicants available who, although not to the same degree as Mrs. McPherson, were nevertheless qualified to fill the vacancies and who could be obtained at a lower salary figure than would have been required to hire Mrs. McPherson. Were the record to contain nothing more, we would be unable to sustain the action of the Human Relations Committee under any circumstances.

In arriving at its conclusion, however, the Human Relations Commission looks further to certain portions of the record which, according to the commission, cast the shadow of racial discrimination over all of the above. These portions of the record are those wherein are contained the references to actual statements of racial bias as testified to by the complainant and her

witnesses. They are crucial to her complaint. If they are not sufficient, there can be no redress.

A review of the entire record demonstrates that the evidence which is so essential to the initial complaint and subsequent action of the Human Relations Commission, consists of Mrs. McPherson's own testimony that she feels that except for her race, her application would have been favorably considered, and the testimony of Mrs. McPherson, a Mrs. Snowden and a Mr. Funari, President of the Connellsville City School Board, to the effect that each of them was told by Mr. George, President of the Connellsville Joint School Committee, that he was not sure he could get a sufficient number of votes on the Personnel Committee for Mrs. McPherson's application because of her race, since three of the five members of the Personnel Committee were from districts which numbered no Negroes among their populations. The three members of the Personnel Committee whom Mr. George said he thought would be prejudiced against Mrs. McPherson were identified in the record as Mr. Swink, Mr. Shetler and Mr. Firestone. At best, we have here the expressed opinion of the complainant herself, coupled with hearsay evidence from witnesses who testified that they heard another man say that he believed that others who shared responsibilities in the affairs of the Connellsville Joint School Board would be prejudiced against the complainant. The record fails to disclose that either Mr. George, Mr. Swink, Mr. Shetler or Mr. Firestone were called as witnesses by the commission.

We are unable to understand why the commission did not make every effort to call these persons as witnesses in order that their testimony could have been made available and subjected to cross examination should respondent have so desired. This failure on the part of the commission becomes even more perplexing when we see from the record that Mr. George and Mr. Shetler

had been subpoened to the hearing and were present in the hearing room during the proceedings.

We agree that the charge of racial bias or discrimination is one which is most difficult to establish. We must also concede that the commission is not bound by the strict rules of evidence in its proceedings. We cannot agree, however, that the commission, not being bound by the strict rules of evidence and faced with a difficult task, may on that account depart completely from the basic requirements of thoroughness and fairness in seeking to establish a violation of the act. The commission acts as the representative of the complainant, not as her advocate. In carrying out its representative function, it has an overriding responsibility to see that the rights of all parties concerned are fully protected at all times. This necessitates the commission's taking every opportunity to avail itself of testimony of any person who may be able to contribute to the proper determination of the questions before it. Certainly, in a case where a charge of such gravity is sought to be established, the commission should not content itself with opinion or hearsay evidence involving conjecture regarding the statements or attitudes of persons who are available to the commission and who could be called.

Accordingly, as in Sanitary Water Board v. Penn Weir Construction Co., 69 Dauph. 218 (1956); Sanitary Water Board v. Stinard, 68 Dauph. 26 (1955), and Singer v. State Board of Pharmacy, 25 D. & C. 2d 253, 77 Dauph. 186 (1961), where this court remanded administrative determinations for further hearing because the tribunals had relied too much on inference, and since we feel, in light of the very serious nature of the charge which has been leveled against the respondent in this case, that the essential facts should be established by legally competent evidence, from wit-

nesses subject to cross examination, we make the following

*Order*

And now, November 18, 1963, the within record is remanded to the Human Relations Commission for further hearing, consistent with this opinion.