## Antinoro v. Commonwealth

*Jerome H. Gerber* of *Handler & Gerber*, for appellant.

*Morley W. Baker*, for appellee.

SHELLEY, J., March 11, 1968.—This is the appeal of Anthony Antinoro, trading as Tony's Barber Shop (hereinafter referred to as "appellant") under the provisions of article III, sec. 304 of the Unemployment Compensation Law of December 5, 1936 (1937), P. L. 2897, 43 PS §784. The appeal is from an order of the Bureau of Employment Security of the Pennsylvania Department of Labor and Industry (hereinafter referred to as "the bureau") denying appellant's petition for reassessment. Subsection (c) of sec. 304 of the act provides:

"Any petitioner dissatisfied with the action of the department on his petition for re-assessment may appeal therefrom to the Court of Common Pleas of Dauphin County . . . Such appeal . . . shall . . . specify all the objections to such assessment or re-assessment, and any objections not specified in the petition shall not be considered by the court. . . ."

We held in Department of Labor and Industry v. Stuart & Co., 76 Dauphin 136 (1960), that appeals under the Act of 1936, supra, are in the nature of certiorari. We said, on page 144:

". . . all that comes up to us is the record itself and we must determine from it whether or not there has been an abuse of discretion and whether the law has been met according to the facts developed".

On appeals from administrative boards and commissions, the court will not pass upon the credibility of witnesses and the weight of the testimony: Sanitary Water Board v. Anthony, 66 Dauph. 250 (1954). However, the agency's findings must be supported by evidence sufficient to convince a reasonable mind to a fair degree of certainty, but the court will not weigh

the evidence: Pennsylvania State Board of Medical Education and Licensure v. Ferry, 63 Dauph. 243 (1952), affirmed 172 Pa. Superior Ct. 372 (1953). As to the meaning of "substantial evidence", see Pennsylvania State Board of Medical Education and Licensure v. Schireson, 360 Pa. 129, 133 (1948).

Therefore, it is our duty to determine if the facts found by the bureau are supported by competent evidence and the bureau's conclusions of law are supported by the facts so found.

This proceeding involves the proper interpretation and application of sections 4(1) (1), 4(1) (2) (B) and 4(x) of the Unemployment Compensation Law which, insofar as pertinent, read as follows:

"(1) 'Employment' means all personal service performed for remuneration by an individual under any contract of hire, express or implied, written or oral, including service in interstate commerce and service as an officer of a corporation [1]. . .

"(2) (B) . . . Services performed by an individual for wages shall be deemed to be employment subject to this act unless and until it is shown to the satisfaction of the department that—(a) such individual has been and will continue to be free from control or direction over the performance of such services both under his contract of service and in fact; and (b) as to such services such individual is customarily engaged in an independently established trade, occupation, profession or business [2] . . .

"(x) 'Wages' means all remuneration, (including the cash value of mediums of payment other than cash), paid by an employer to an individual with respect to his employment. . . ." [3]

---

[1] 43 PS §753(1) (1).

[2] 43 PS §753(1) (2) (B).

[3] 43 PS §753(x).

Appellant is licensed to operate a barber shop in Pennsylvania and, pursuant thereto, conducts a shop in which there are five barber chairs. One chair is utilized by him and the other four by licensed master barbers.

The question involved in this case is whether or not services performed and the remuneration received therefor by the barbers constitute "employment" and "wages" as the terms are defined in the Unemployment Compensation Law.

Appellant argues that the relationship between appellant and the barbers is that of "lessor" and "lessee"; that the tenant barbers are free from his control and direction and that the individual barbers are performing services which are customarily recognized as an independently established profession, and that the services performed by the individual master barbers are excluded from coverage of the Unemployment Compensation Law.

The bureau determined that appellant is an "employer"; that the barbers are in "employment" of appellant; and that the remuneration received by the barbers is "wages" within the meaning of the Unemployment Compensation Law and, therefore, subject to the reporting and contribution provision of the Unemployment Compensation Law.

The basic principles governing the instant case were considered by this court in Bureau of Employment Security v. Hecker & Co., 78 Dauph. 354 (1962), affirmed by the Supreme Court in 409 Pa. 117 (1962). In that case, the Supreme Court held that, before examining more closely the words of the statute, three preliminary observations as to the structure of the act must be noted. First, it is clear that the act's definition of "employment" extends beyond those considered "servants" or "employees" under common-law concepts. Secondly, once it is shown by the department

that an individual is performing services for wages as the term is defined by the act, the burden shifts to the taxpayer to bring itself within either the general exception set forth in section 4(1)(2)(a) and (b) or one of the special exclusions referred to in section 4(1)(4),[4] and finally, the requirements in the exceptions in section 4(1)(2)(a) and (b) being in the conjunctive, the taxpayer must satisfy both subsections (a) and (b) to exclude itself from coverage under the general exception. See also Department of Labor & Industry v. Valley Forge Grinding Wheel Co., 83 Dauph. 322, 325 (1965). See also Department of Labor and Industry v. Aluminum Cooking Utensil Company, 368 Pa. 276 (1951).

The bureau found that the barbers were engaged under an oral contract which provided that, of the money received by each of them for services rendered customers, the barber would receive 70 percent and appellant 30 percent. The record discloses that appellant had exclusive control of the money. The remuneration received from a customer was marked down on a two-part sales slip containing each of the barber's identifying numbers. One part was deposited in the barber's individual compartment in the shop's cash register and the second part was retained by the barber as his personal record. At the end of each week, the sales slips in each compartment were totaled and checks issued to each of the barbers for the sum due under the arrangement.[5] The bureau concluded that the money thus received by the barbers constituted remuneration for services as defined in the Unemployment Compensation Law.

Since the barbers were performing services for remuneration, the burden shifts to appellant to bring

---

[4] 43 PS §753(1)(4). The facts of the instant case make the special exclusion in this section inapplicable.

[5] Fact number 7 found by the bureau.

himself within the general exception of section 4(1) (2) (B), supra, or one of the special exclusions in section 4(1) (4) ; Bureau of Employment Security v. Hecker & Co., supra. See also Appeal of Baldwin-Lima-Hamilton Corp., 86 Dauph. 370 (1966).

Appellant testified before the bureau that he was the lessee of the premises in which his shop was located and was the holder of a license issued by the Commonwealth of Pennsylvania to own and operate the barber shop involved in these proceedings. He also provided equipment and supplies, except the barber's personal hand tools used in rendering barbering services, which was in accordance with the custom of the trade. Appellant determined the price for the various services rendered in the shop and fixed the hours when the shop was open. On an occasion, appellant terminated the employment of a barber for the reason that the barber did not get along with appellant, the customers and other barbers working in the shop. The only name displayed on the outside window of the shop was that of appellant.

This testimony, in our opinion, supports the bureau's conclusion that the barbers were not free from the control or direction of appellant in their performance of the services rendered by them in appellant's shop.

There was also testimony that one of the barbers was associated with appellant from April 1962 to April 1963, although qualified as a master barber since 1947. This barber did not pursue that occupation for longer than two years at any one time and, prior to the association with appellant, he had been working as a salesman for Bethlehem Steel Company. Another of the barbers, while working as a stock boy in Cleveland, O., became associated with appellant as an apprentice in 1961. This barber has not been engaged in the barbering occupation other than during his association with appellant. Another of the barbers

associated with appellant has been licensed as a barber since 1932. He became associated with appellant in February of 1964 and continued in that association until February 1965. Prior to his association with appellant, he had been employed for a period of more than three years as a dormitory supervisor in the Westmont Rehabilitation Center. Prior to that time, he had operated a one-man shop in Summerhill, Pa., and in Uniontown, Pa. There was no testimony that, while the barbers were working in appellant's shop, they rendered a similar service in any other barber shop.

This testimony supports the bureau's conclusion that the barbers working in appellant's shop were not engaged in an independently established occupation.

Appellant, as well as the individuals whose status as employes is involved in these proceedings, practice their occupations under the provisions of the Act of June 19, 1931, P. L. 589, sec. 1, 63 PS §551, et seq. Under the requirements of that act, each must possess a master barber's license before he can serve the public as a barber. In addition, the shop in which they operate must be licensed in the name of the owner thereof as in this case, appellant. Obviously, only one such license may be issued to each shop.

In order to obtain and retain the shop license, the owner must meet the requirements set forth in the act, and he is responsible for seeing to it that these requirements are maintained. It necessarily follows that the owner must exercise, or has the right to exercise, a substantial amount of control over the other barbers who may operate in any one establishment. Otherwise, the owner would be in constant peril of having his shop license revoked. Accordingly, the requirements of this act are incompatible with appellant's contention in these proceedings.

The bureau made the following

## Conclusions of Law

"1. The services rendered by [the barbers] constitute 'employment' within the meaning of section 4(1) (4) (1) of the Pennsylvania Unemployment Compensation Law.

"2. The [appellant] has failed to show that in the performance of such services, the individuals were free from control and that as to such services, they are customarily engaged in an independently established business, occupation or profession.

"3. The remuneration received by such individuals constitutes 'wages' within the meaning of section 4(x) of the Pennsylvania Unemployment Compensation Law.

"4. The [appellant] is an employer subject to the reporting and contribution provisions of the Pennsylvania Unemployment Compensation Law".

All of the conclusions of the bureau, in our opinion, are supported by the testimony taken by the bureau. Accordingly, we make the following

## Order

And now, March 11, 1968, the appeal of Anthony Antinoro, trading as Tony's Barber Shop, is hereby dismissed, and the determination of the Department of Labor and Industry that the individual barbers in question were in the employment of appellant within the meaning of the Pennsylvania Unemployment Compensation Law is hereby sustained. Costs to be paid by appellant.