Pennsylvania State Board of Medical Education and Licensure *v.* Schireson, Appellant.

Argued July 6, 1948. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*John H. Fertig* and *Thomas D. Caldwell,* with them *Caldwell, Fox & Stoner,* for appellant.

*John C. Phillips,* Deputy Attorney General, with him *T. McKeen Chidsey,* Attorney General, for appellee.

OPINION BY MR. JUSTICE DREW, September 27, 1948:

This is an appeal from the order of the Court of Common Pleas of Dauphin County which affirmed the action of the State Board of Medical Education and Licensure in revoking the license, issued on June 29, 1910, to appellant, Henry J. Schireson, to practice medicine and surgery in this Commonwealth.

After obtaining his license in 1910, appellant engaged in the practice of his profession in Pennsylvania until 1913, when he left to practice in another State. In 1932 he returned to Pennsylvania and resumed practice here until June 30, 1944. At that time the State Board of Medical Education and Licensure issued a citation against him, alleging that he had obtained his medical license through fraud, misrepresentation and deception. Appellant then brought a bill in equity in the Court of Common Pleas of Dauphin County to restrain the Board, by injunction, from proceeding with a hearing on the citation, on the ground that it was without authority and also that it was guilty of laches in permitting thirty-four years to elapse before the issuance of the citation. The court dismissed the bill, and, on appeal to this Court, we affirmed the decree of the learned court below (*Schireson v. Shafer,* 354 Pa. 458, 47 A. 2d 665). Thereafter a hearing was had on the merits, and the Board revoked appellant's license.

He appealed to the Court of Common Pleas of Dauphin County, which, on May 24, 1948, sustained the revocation of the license. This appeal followed.

Appellant's application for a license was issued pursuant to the Act of May 18, 1893, P. L. 94, as amended by the Act of April 27, 1909, P. L. 251. There is no contention that appellant lacked the necessary educational qualifications to admit him to the examination for a license. It is admitted that appellant received the degree of Doctor of Medicine from the Maryland Medical College on May 3, 1906, and that he successfully passed the appropriate medical examination given in 1910 by the Medical Council of Pennsylvania, the predecessor of appellee-Board. Appellant is not charged with malpractice, illegal or unethical conduct in his profession. The sole charge is that he presented fraudulent credentials to induce the Medical Council in 1910 to issue a license to him.

The Board alleges that the fraud of appellant in obtaining a license to practice in Pennsylvania consisted of the following: "(1) submitting to the Medical Council of Pennsylvania in support of his application for medical licensure a certificate of medical education which purports to be signed by the then Dean of the Maryland Medical College but which was not signed by the then Dean", and "(2) submitting to the Medical Council of Pennsylvania a sworn application for licensure to practice medicine which contained false statements regarding his medical education. The said false statements are that he had studied medicine four years and that he attended the University of Maryland during the year 1902-1903."

Appellant argues that because thirty-four years elapsed between the granting of the license to him in 1910 and the issuance of the citation in 1944, the doctrine of laches should prohibit the Board from revoking his license. With this contention we cannot agree. Laches cannot be imputed by the mere passage of time,

but must be determined from all the circumstances of the case: *Schireson v. Shafer,* supra, 463; *First Nat. Bk. v. Lytle Coal Co.,* 332 Pa. 394, 3 A. 2d 350; *Stimson v. Stimson,* 346 Pa. 68, 29 A. 2d 679. The significance of length of time in the imputation of fraud was set forth in *Prevost v. Gratz,* 6 Wheat. 481, 498, by Mr. Justice STORY in 1821. Speaking for the United States Supreme Court, he said: "But length of time necessarily obscures all human evidence; and as it thus removes from the parties all the immediate means to verify the nature of the original transactions, *it operates by way of presumption, in favour of innocence, and against imputation of fraud.*" (Italics added).

The rule of *Prevost v. Gratz,* supra, is of particular significance in the instant case. It was the testimony of one of the Board's own witnesses that most of the academic records of the Maryland Medical College had been destroyed by fire before the citation was issued. In addition, a letter, dated March 15, 1911, from W. S. Smith, M.D., the then Dean of the Maryland Medical College, to Miss Mary M. McReynolds, clerk of the Medical Council of Pennsylvania, was introduced into evidence by the Board. That letter establishes that within eight months of the licensure of appellant an investigation was made of his credentials, and as no action was then undertaken to revoke his medical license, the only reasonable deduction possible is that the credentials were found to be authentic and satisfactory at that time. Thirty-four years later, we cannot reasonably expect verification of them with the same degree of certainty that was present then.

Appellant further contends that the evidence upon which the Board acted was legally insufficient. The Administrative Agency Law of June 4, 1945, P. L. 1388, §32, provides, inter alia: "Agencies shall not be bound by technical rules of evidence at agency hearings, and all relevant evidence of reasonable probative value may be received . . ." Section 44 of the statute provides, among

other things, that on appeal an agency's adjudication must be affirmed by the court, unless *"any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence."* (Italics added).

In *P. L. R. B. v. Kaufmann Dept. Stores, Inc.*, 345 Pa. 398, 400-401, 29 A. 2d 90, Mr. Justice HORACE STERN, speaking for this Court, defined "substantial and legally credible evidence", as follows: "All orders and decrees of legal tribunals, including those of administrative boards and commissions, must be supported by evidence sufficient to convince a reasonable mind to a fair degree of certainty; otherwise our vaunted system of justice would rest upon nothing higher than arbitrary edicts of its administrators. 'Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion': Consolidated Edison Co. v. National Labor Relations Board, 305 U. S. 197, 229. 'Substantial evidence is more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established': National Labor Relations Board v. Columbian Enameling & Stamping Co., 306 U. S. 292, 300. 'The rule of substantial evidence is one of fundamental importance and is the dividing line between law and arbitrary power': National Labor Relations Board v. Thompson Products, Inc., 97 Fed. 2d 13, 15; National Labor Relations Board v. Union Pacific Stages, Inc., 99 Fed. 2d 153, 177." See *Kaufman Const. Co. v. Holcomb*, 357 Pa. 514, 517, 55 A. 2d 534.

With these principles in mind, let us examine the evidence adduced at the hearing before the Board to determine whether it was legally sufficient to justify the conclusion that appellant used fraud to obtain a license to practice in this Commonwealth. We shall first consider the evidence upon which the Board predicated its finding that appellant committed fraud in submitting, in support of his license application, a "Certificate

of Medical Education" which purported to be signed by the Dean of the Maryland Medical College. The undisputed fact is that the certificate received by the Medical Council is dated June 2, 1910, and at the end thereof is signed in ink: "Maryland Medical College, C. B. Smith, Dean." In an endeavor to prove who was Dean of Maryland Medical College on June 2, 1910, appellee called as a witness Dr. Alan Beetham, who testified that "to the best of [his] recollection William S. Smith was Dean in 1910." Although this witness graduated from that school in the Class of 1909, the person named on his diploma as Dean was not the same person he testified was Dean during 1909. His credibility further was impaired by his admitted use of narcotics over a long period of years, which, together with his age, obviously affected his memory. But even if we assume, en arguendo, that on June 2, 1910, William S. Smith was Dean, the alleged fraud of appellant was not established. If the signature, "C. B. Smith, Dean", was not the name or the signature of the then Dean, there remains the vital question by whom and at whose direction the incorrect signature was affixed to the certificate. The record is devoid of any evidence that the questioned document ever passed through appellant's hands. That it could have been mailed directly from the Maryland Medical College at Baltimore to the Medical Council at Harrisburg was admitted by appellee's witnesses. At most the evidence presented by appellee might arouse suspicion, but it is clearly insufficient to prove the allegation of fraud.

The second question to be considered is whether there was substantial evidence to support the finding that appellant committed fraud in submitting a sworn application for licensure which stated that he had studied medicine for four years and that he attended the University of Maryland during the academic year 1902-03.

The printed catalogue of the School of Medicine of the University of Maryland for the Session 1903-4 does not mention appellant as a member of the class of 1902-3, that for the Session 1904-5 lists him as a member of the first year class in 1903-4, and that for the year 1905-6 lists him as a member of the second year class in 1904-5. These catalogues were not offered into evidence, and no witness was presented to testify to their accuracy. They have little probative value, inasmuch as they were not official school records, and the listing of the various students attending the sessions could be incorrect, due, inter alia, to the carelessness of those preparing the catalogues for publication, or to errors of the printer. A copy of an undated letter purported to have been written by R. Dorsey Coale (now deceased), former Dean of the School of Medicine of the University of Maryland, was introduced into evidence by appellee. No reliance properly can be placed on such a paper, since no proof was adduced as to when or by whom the letter actually was written or where the writer obtained the information contained therein. The Board also offered two matriculation cards from the University of Maryland bearing appellant's name. The one, dated September 14, 1903, had several unfilled blanks, one of which followed the question—"What Medical Courses have you taken and at what college?" The other card, dated October 3, 1904, had, in answer to the same question, the following: "One year University of Md." We are convinced that this negative evidence is no proof that appellant did not attend the University of Maryland for the year 1902-3, as he claims. At most, such evidence is but a mere scintilla, and is insufficient to overcome the presumption in favor of appellant's innocence.

When appellant received his degree of Doctor of Medicine from the Maryland Medical College in 1906, that school required a four year medical course for graduation, and, therefore, it is a reasonable inference

that when he was admitted to senior status in 1905, he established to the satisfaction of the school authorities the record of his first three years in other medical schools. Appellant insists that the information which he gave on his application for licensure that he attended the University of Maryland Medical School in 1902-3 is correct, and to substantiate his claim, he produced a witness, Dr. Samuel Ritter, a dentist. This witness testified that he and appellant registered together on the same day in the Fall of 1902. Appellant and Dr. Ritter, the only two living witnesses with knowledge of the facts in dispute, both stated that appellant in 1902-3 attended the University of Maryland Medical School. To disregard their sworn testimony and rely upon incomplete records of uncertain origin and negative evidence to prove fraud is to violate the express requirement of "substantial evidence" under the Administrative Agency Law of 1945.

We have most carefully examined the entire record and have concluded that the weak and inconclusive evidence adduced by appellee does not rebut the presumption of innocence and that the alleged fraud has not been proved. On the evidence presented, it would be grossly unjust to revoke appellant's license to practice his chosen profession and thereby deprive him of his means of livelihood.

Order reversed, and the State Board of Medical Education and Licensure is directed to reinstate the license issued to appellant to practice medicine and surgery in this Commonwealth.

Mr. Justice LINN filed a dissenting opinion concurred in by Mr. Justice HORACE STERN and Mr. Justice ALLEN M. STEARNE.

---

DISSENTING OPINION BY MR. JUSTICE LINN:

I dissent on the ground that there is substantial evidence to support the findings of the administrative

board. The opinion of the court below, written by Judge RICHARDS, clearly shows this. It is not the duty of this court to reweigh the evidence and sit as a super-administrative board.