**Thomas E. PAINE et al.**

v.

**BOARD OF REGENTS OF the UNIVERSITY OF TEXAS SYSTEM et al.**

**Civ. A. No. A-72-CA-5.**

United States District Court,
W. D. Texas,
Austin Division.
June 28, 1972.

James R. Weddington, Austin, Tex., for plaintiffs.

Crawford C. Martin, Atty. Gen., of Texas, W. O. Shultz, Asst. Atty. Gen., Austin, Tex., for defendants.

## MEMORANDUM OPINION

ROBERTS, District Judge.

This is a suit for declaratory and injunctive relief predicated upon 28 U.S.C. §§ 1331, 1343 and 42 U.S.C. § 1983 challenging as unconstitutional Subsections 3.3b and 3.3c of Chapter 6, Rules of the Regents of the University of Texas System, which in effect require the automatic suspension for two (2) years of any student "placed on probation for or finally convicted of the illegal use, possession and/or sale of a drug or narcotic." [1] As shown in the margin, all

---

1. At the time this suit was filed, plaintiffs had been notified by the University of Texas at Austin, a component institution of the System, that they would be expelled under Section 3.3, Chapter 6 of the Rules, which then read as follows:

Gambling, immoral conduct, dishonesty, the illegal use, possession, or sale of a drug or narcotic, or the excessive use of intoxicating liquors renders the student subject to discipline. Any student placed on probation for or finally con-

students whose offenses occurred prior to March 1, 1972, will automatically be expelled unless they elect in writing to be governed by the automatic suspension provisions substituted for the former expulsion provisions by amendment of the Rule subsequent to the filing of this suit.

Plaintiffs, who are university students on probation or released from probation following convictions in 1971 for possession of marihuana in violation of the Texas narcotics laws, would now be suspended under these provisions but for defendants' agreement to forego such action during the pendency of this suit. They claim, on behalf of all other persons similarly situated, that Subsections 3.3b and 3.3c violate: (1) the Double Jeopardy Clause of the Fifth Amendment by subjecting the student drug or narcotic offender to two punishments by the same sovereign; (2) the Due Process Clause of the Fourteenth Amend-

---

victed of illegal use, possession, or sale of a drug or narcotic shall be automatically expelled from school, regardless of whether or not the illegal act that gave rise to the conviction was committed on the campus of one of the component institutions of The University of Texas System.

Subsequently the Regents amended this Section. The textual provisions now under attack are:

3.3b . . . . . with respect to, etc. . . . with respect to any person who is placed on probation for or is finally convicted of the illegal use, possession, and/or sale of a drug or narcotic, if he is a student at a component institution of The University of Texas System at the time such probation is assessed or such conviction becomes final, he shall be automatically suspended from such institution and shall be ineligible to continue as or become a student at any component institution of the University of Texas System for a period of twenty-four consecutive months immediately following the date on which such probation is assessed or such conviction becomes final, and if he is not a student at a component institution of The University of Texas System at the time such probation is assessed or such conviction becomes final, he shall be ineligible to become a student at any component institution of The University of Texas System for a period of twenty-four consecutive months immediately following the date on which such probation is assessed or such conviction becomes final. The provisions of this paragraph shall apply regardless of whether the offense in question occurred on or off the campus of a component institution of The University of Texas System and regardless of whether the offense in question occurred while the offender was a student enrolled at a component institution of The University of Texas System; provided, however

that in order that the provisions of this paragraph will not have retroactive effect and in order that all persons may have fair notice hereof, the provisions of this paragraph shall not apply to any of the offenses described hereinabove which occur prior to March 1, 1972.

3.3c With respect to the illegal use, possession, or sale of a drug or narcotic by a student enrolled in any component institution of The University of Texas System when such offense occurred after March 14, 1969, and prior to March 1, 1972, the following shall apply:

'Any student placed on probation for or finally convicted of illegal use, possession, or sale of a drug or narcotic shall be automatically expelled from school, regardless of whether or not the illegal act that gave rise to the conviction was committed on the campus of one of the component institutions of The University of Texas System.'

provided, however, that any person who, prior to March 1, 1972, commits or has committed an offense that would otherwise be governed by the provisions of this Subsection 3.3c, may elect in writing to have such offense governed by the provisions of the foregoing Subsection 3.3b and thereby reduce the penalty applicable to the offense from permanent expulsion to suspension for a period of twenty-four consecutive months immediately following the date on which his probation is assessed or his conviction becomes final; and, provided further that any person who has heretofore been permanently expelled from one of the component institutions of The University of Texas System on account of the illegal use, possession and/or sale of a drug or narcotic may elect in writing to have such penalty reduced from permanent expulsion to suspension for a period of twenty-four consecutive months immediately following the date on which his probation was assessed or his conviction became final.

ment by failing to afford the student to be suspended an opportunity to show that he is fit to remain at the university despite his conviction; and (3) the Equal Protection Clause of the Fourteenth Amendment by singling out drug or narcotic offenders for automatic suspension. Plaintiffs also claim that these rules are discriminatorily applied only to students convicted or placed on probation in Travis County, Texas. This Court believes that neither the summary procedure prescribed nor the classification created by Subsections 3.3b and 3.3c bears a relationship to the Regents' legitimate aim of controlling campus drug abuse sufficiently rational to withstand the requirements of the Due Process Clause and the Equal Protection Clause. Enforcement of these provisions must accordingly be enjoined.

The facts leading this Court to these conclusions are for the most part undisputed. All of the named plaintiffs are students in The University of Texas System who in state criminal proceedings have been convicted of and placed on probation for illegal possession of marihuana. Although the University placed plaintiffs Paine and Roberts on scholastic probation in December, 1971, the other plaintiffs are in good academic standing and none of the plaintiffs have been subjected to any disciplinary action other than that made the subject of this suit. Each has been notified by the Office of the Dean of Students, University of Texas at Austin, that the questioned Regents' Rule applies to him and that his expulsion is imminent.

There are but two administrative procedures available to plaintiffs, neither of which afford them any relief from the effect of the rule. Since their alleged offenses occurred prior to March 1, 1972, they may elect in writing pursuant to Subsection 3.3c to have the penalty imposed reduced from automatic expulsion to automatic suspension for twenty-four consecutive months. They may also request a hearing, presumably before a faculty-student disciplinary committee, solely to determine whether in

fact they have been finally convicted or placed on probation for a drug or narcotics offense. Should they avail themselves of this procedure, they will have no opportunity to show whether they actually committed the offenses for which they were convicted, whether there are circumstances in extenuation or mitigation, or whether their continued attendance would pose any significant threat to the educational aims of the university. Since none of the plaintiffs contests the fact of his probation for possession of marihuana, such a hearing would be superfluous in this case.

Final conviction of or probation for a drug or narcotics offense is the only type of student misconduct for which the Regents' Rules provide automatic expulsion or suspension. All other crimes, offenses, misconduct or immoral activities do not result in automatic expulsion or suspension, but instead render the accused student "subject to discipline." Chapter 6, Section 3.10 of the Rules provides that "in cases where the facts are in dispute" a student charged with an infraction is, among other procedural safeguards, entitled to notice of the specific charges and a hearing before a tribunal appointed by the institutional head from the faculty or from the faculty and the student body. He may not only confront the witnesses against him and offer controverting evidence but, as the testimony of Associate Dean Lawrence Franks clearly shows, he may also show extenuating and mitigating circumstances bearing on the punishment he is to receive. It is also clear from the testimony of Dean Franks that the hearing tribunal, which at the Austin campus is composed of three faculty members and two students, may impose a variety of penalties beginning with a written admonition and ranging upward through disciplinary probation, removal of student privileges, withholding of transcript or degree, and suspension, to the severest penalty of expulsion, which is defined as permanent severance from the University of Texas System. The factors that may be considered by the

tribunal in assessing punishment are the seriousness of the offense, the student's past record, the probability that he will repeat the offense, and any mitigating circumstances. As previously noted, however, the tribunal faced with a student drug or narcotic offender possesses no discretion whatever in assessing punishment; suspension for twenty-four months must automatically be imposed once the sole fact of conviction or probation is established.

■ 1. *Double Jeopardy.* Plaintiffs' attempt to invoke the Double Jeopardy Clause in support of their claim is without merit. Through two separate governmental organs, the legislative branch and the Board of Regents, the State does indeed impose two successive sanctions for the same offense: judicially imposed punishment and automatic suspension from the University of Texas System. However, the state laws defining criminal conduct and authorizing its punishment are intended to vindicate public justice in regard to the individual offender while, as plaintiffs recognize in their Trial Brief, the Regents' Rule mandating automatic suspension of student drug or narcotic offenders is intended to protect the university community and the educational goals of the institution from such adverse influence as the offender may wield if he is allowed to remain a student. Thus the two sanctions imposed by the state upon plaintiffs have sufficiently different underlying purposes to permit characterization of the first as "criminal" or "punitive" and the second as "civil", "remedial" or "administrative." Since the Double Jeopardy Clause operates only upon sanctions of the first type successively imposed for the same offense, plaintiffs may not avail themselves of its protection here. United States ex rel. Marcus v. Hess, 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443 (1943); Helvering v. Mitchell, 303 U.S. 391, 58 S.Ct. 630, 82 L.Ed. 917 (1938); see, Mullican v. United States, 252 F.2d 398 (5th Cir. 1958); General Order on Judicial Standards of Procedure and Substance in Review of Student Discipline in Tax Supported Institutions of Higher Education, 45 F.R. D. 133 (W.D.Mo.1968); McKay, The Student as Private Citizen, 45 Denver L.J. 558 (1968).

■ 2. *Due Process.* The most powerful of plaintiffs' contentions is that by failing to afford students convicted or placed on probation for drug or narcotics offenses a hearing to determine whether in fact they are fit to remain at the university, the automatic suspension provisions in effect create an irrational and irrebuttable presumption that such students are unfit and thereby deprive them of due process of law. In considering the challenged rules under the Due Process Clause, the Court recognizes that due process does not require a hearing "in every conceivable case of government[al] impairment of private interest," and that ascertainment of "what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government[al] function involved as well as the private interest that has been affected by governmental action." Cafeteria Workers v. McElroy, 367 U.S. 886, 81 S. Ct. 1743, 6 L.Ed.2d 1230 (1961); Goldberg v. Kelley, 397 U.S. 254, 263, 90 S. Ct. 1011, 25 L.Ed.2d 287 (1970).

■ The private interest affected in this case is that of a student in good standing to continue to pursue his education at a state-supported institution of higher learning. This interest was deemed "an interest of extremely great value" worthy of the protection of the Due Process Clause in Dixon v. Alabama State Board of Education, 294 F.2d 150 (5th Cir. 1961), and absent some powerful countervailing interest the Court entertains no doubt that it also should be protected here. "This is but an application of the general proposition that relevant constitutional restraints limit state power to terminate an entitlement whether the entitlement is denominated a 'right' or a 'privilege'." Bell v. Burson, 402 U.S. 535, 539, 91 S.Ct. 1586, 1589, 29 L.Ed.2d 90 (1971); see, Dixon

**204**

v. Alabama State Board of Education, supra, at 166. Indeed, the Regents could hardly be heard to contend otherwise in light of Section 3.10 of Chapter 6 of the Rules, which admonishes component institutions of the University of Texas System to administer discipline "within procedures of recognized and established due process" and Section 3.11 of Chapter 6, which makes the assessment of penalties "subject to the procedures of due process."

██ The Regents have articulated the rather narrow interest they wish to protect in the opening sentence of Subsection 3.3b:

> The dramatic increase in the illegal use, possession, and sale of drugs and narcotics by students enrolled in the several component institutions of the University of Texas System makes it imperative that insofar as possible such illegal users, possessors, and sellers of drugs and narcotics be identified and temporarily separated from the several student bodies so that the potential danger of their influencing other students to illegally use, possess, or sell drugs and narcotics will be minimized.

This is but one facet of the broader interest of the Board of Regents in providing a quality education to students in good standing within the University of Texas System, and none of the expert testimony offered at trial is needed to perceive that it is a legitimate interest well within the power of the Board to implement. Neither the plaintiffs nor this Court have any doubt that the Regents may suspend, or indeed expel, any student drug or narcotic offender who demonstrably poses such a threat to other students in the University of Texas System. But, as in Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed. 551 (1972) " . . . we are here not asked to evaluate the legitimacy of the state ends, but rather to determine whether the means used to achieve these ends are constitutionally defensible." Id., 92 S. Ct. at 1213. To paraphrase the analysis in Stanley: What is the interest of the Board of Regents in separating a student in good standing from the University of Texas System without a hearing designed to determine whether the student poses a threat of influencing other students to use, possess or sell drugs or narcotics in a particular disputed case? This Court observes that the Board registers no gain toward its declared goal when it separates a student who presents no such danger from the university. Indeed, if the plaintiffs here present no such danger, the Board spites its broader purpose of providing higher education to qualified students when it needlessly prevents them from continuing their studies. Id. There is no material distinction between the automatic suspension rule challenged here and the statutory schemes that in Stanley separated unwed fathers from their children and in Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971) separated drivers from their drivers licenses. In both of those cases, as here, the provisions in question infringed protected interests "without reference to the very factor [in Stanley, fitness as a parent; in Bell, fault in driving; and here, influence upon other students] which the State itself deemed fundamental to its statutory scheme." Stanley, supra, at 653. The presumption that must withstand the test of reasonableness in this case is that plaintiffs and all other students finally convicted or placed on probation for drug or narcotic offenses will influence other students to use, possess or sell drugs or narcotics unless they are suspended from the university for a period of 24 consecutive months following their convictions.

It may be, as the defendants attempted to show through the testimony of Dr. Baird and the two former narcotic addicts rehabilitated through his program in New York City, that most users of drugs or narcotics attempt in their social relationships to persuade non-users to sample the forbidden fruit. Certainly this is more likely to be true of one who sells these substances to others. But it by no means follows that every student

convicted of a drug or narcotics offense falls into this category. Indeed, all of the competent evidence bearing on convicted students having any contact with the University of Texas System points the other way. Since a student who is sent to prison for his offense has no such contact, unless he returns on parole (and no such occurrence is shown in this record) for all practical purposes the students under consideration are those who have been placed on probation for their offenses. The State of Texas has, through its judicial system, determined that these students are fit subjects for rehabilitation and that their freedom poses no risk to the community at large. Indeed, the faith of the civil authorities in plaintiff Copp is such that the State of Texas has undertaken to pay for his tuition and books at the Austin campus so that he may continue his studies as part of his rehabilitation on probation. According to the uncontradicted testimony of the Chief Probation Officer of Travis County, persons suspected of selling drugs or narcotics are rarely granted probation and the "great majority" of students on probation have been convicted merely of simple possession. The graduated degrees of supervision exercised over probationers in Travis County is successful in all but approximately 11% of the drug or narcotic cases. Plaintiffs also introduced uncontroverted testimony from several expert sources that most students on probation for use or possession in Travis County exert a positive influence upon other students by avoiding contact with drugs or narcotics altogether. There is nothing in the record showing that these facts are substantially different elsewhere within the University of Texas System.

Nor can the reasonableness of the presumption be sustained on the ground of administrative inconvenience. The uncontroverted facts at the University of Texas at Austin are that 7 students were expelled under the preceding automatic expulsion rule, 34 students are now facing automatic expulsion under Subsections 3.3b and 3.3c, 59 students are presently on probation for simple possession of marihuana, and 7 students are presently on probation for possession of drugs or narcotics other than marihuana but not including heroin in Travis County. For a university campus with an enrollment this Court judicially knows to be approximately 40,000 students, it will be no great burden to afford a hearing prior to suspension for the relatively small number of students involved, particularly since the necessary administrative organization and procedures already exist.

This Court accordingly declares that the presumption embodied in Subsections 3.3b and 3.3c of Chapter 6 of the Rules of the Regents of the University of Texas System is contrary to the Due Process Clause of the Fourteenth Amendment. The Board of Regents may not lawfully provide for the suspension or expulsion of a student in good standing upon the bare fact of his final conviction or probation for a drug or narcotic offense absent a hearing affording him the opportunity to show that despite this fact he poses no substantial threat of influencing other students to use, possess or sell drugs or narcotics. This holding is in no wise intended to shift the burden of proof at such a hearing to the university officials or to vitiate the temporary suspension provisions of Section 3.(15) of Chapter 6 of the Rules.

■ 3. *Equal Protection.* As previously noted, with the exception of students finally convicted or placed on probation for drug or narcotics offenses, Chapter 6 of the Rules of the Regents of the University of Texas System accords to all students committing infractions of the Rules a full dress hearing at which evidence in extenuation and mitigation may be presented and a flexible range of penalties imposed at the discretion of the disciplinary tribunal. Students of the excepted class are denied these procedural rights. Thus a student guilty of murder, whether convicted or not, would be "subject to discipline" pursuant to

Section 3.(20), accorded a hearing with full procedural safeguards pursuant to Section 3.10, afforded the opportunity to present evidence in mitigation, and subjected to a range of discretionary penalties; a student placed on probation for simple possession of a single marihuana cigarette would receive none of these procedural safeguards and would automatically be suspended for two years. Stranger still, since Subsections 3.3b and 3.3c are triggered by final conviction or probation, two students guilty of identical drug or narcotic offenses could receive grossly disparate penalties if one were finally convicted or placed on probation by the civil authorities while the other escaped civil prosecution. This Court is not so unwise in the ways of prosecuting attorneys and grand juries in Texas as to suppose that such a hypothetical situation could not, or indeed has not, in fact occurred. It is enough that the Regents have accorded "bedrock procedural rights to some, but not to all similarly situated", Stanley v. Illinois, supra, at 658 of 405 U.S., at 1216 of 92 S.Ct. The above described features of the Regents' regulatory scheme violate the Equal Protection Clause.

The evidence does not permit a like conclusion concerning plaintiffs' claim that subsections 3.3b and 3.3c are being discriminatorily applied by the administration of the University of Texas at Austin only to students convicted or placed on probation in Travis County. The mere fact that some student offenders escape application of these provisions by reason of the failure of university officials to learn of their convictions, or even due to some exercise of conscious selectivity, does not deny equal protection to those to whom the provisions are applied absent some purposeful selection "deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification." Oyler v. Boles, 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962). Although the fervor characterizing the defense of the automatic suspension policy in this lawsuit has hardly been matched by university officials in their efforts to enforce the provisions themselves, there is disclosed in this record no discriminatory application arising to constitutional proportions.

This Memorandum Opinion shall constitute this Court's findings of fact and conclusions of law in accordance with Rule 52, Federal Rules of Civil Procedure.

Counsel for plaintiffs is directed to prepare and submit to this Court within twenty (20) days after notice hereof a form of Declaratory Judgment and Permanent Injunction consistent with this Memorandum Opinion.