No. 25971

The People in the Interest of K.P., Child, Upon the Petition
of W.F. and J.F., and Concerning S.D.1, et al.

(514 P.2d 1131)

Decided September 17, 1973. Opinion modified and as modified
rehearing denied October 29, 1973.

410

Michael R. Enwall, Lynwood J. Evans, for petitioners-appellants.

Henry, Cockrell, Quinn & Creighton, Richard C. Cockrell, Peter M. Eggleston, for respondents-appellees.

*En Banc.*

MR. JUSTICE ERICKSON delivered the opinion of the Court.

K.P., the petitioner in this case, was expelled from the Denver public school system as the result of assaults which he made on some of his fellow students. K.P. challenges both his initial suspension and subsequent expulsion on the grounds that C.R.S. 1963, 123-20-7(1)(d), a portion of the School Attendance Law of 1963, is unconstitutionally vague and overbroad. In addition, K.P. contends that even if the challenged statute is constitutional, he was denied an adequate due process hearing and, therefore, the expulsion which resulted from the hearing is unlawful.

For the reasons discussed below, we hold that C.R.S. 1963, 123-20-7, is not vulnerable to the attack which the petitioner has raised. We further find that the hearing afforded K.P. satisfied due process requirements, and accordingly, we affirm the decision of the juvenile court.

On January 20, 1972, K.P. was involved in at least two fights with other students at Place Junior High School. Immediately following the incidents, the principal of Place suspended K.P. from school for five days. On January 24, near the end of the five-day suspension period, the principal requested, and the school superintendent ordered, a ten-day extension of the original suspension period to allow time for school authorities to complete their investigation. K.P. and his parents met with the principal and members of his staff on January 25, and again on February 1, to discuss the altercation and ·the course of action which should be followed as a consequence of K.P.'s conduct. After the

second conference, the principal sent a recommendation to the school superintendent suggesting that K.P. be expelled for the remainder of the school year. The principal also notified K.P. and his parents of the recommendation and advised them of their right to request a hearing on the matter.

Upon their request, a hearing was held on February 14, 1972, with the superintendent's representative presiding. Fourteen witnesses testified at the hearing which lasted nearly eight hours. Counsel for K.P. offered witnesses on his behalf and extensively cross-examined the witnesses which the school presented.

After consulting with the hearing examiner regarding the evidence, the superintendent ordered K.P. expelled. An appeal was then taken by K.P. to the Board of Education. By prior agreement between counsel, the Board considered only the hearing transcript, together with certain new evidence. Thereafter, the Board of Education voted to support the superintendent's decision to expel. The juvenile court affirmed the Board of Education's decision, and K.P. appealed to this court.

I.

Constitutionality of C.R.S. 1963, 123-20-7(1)(d).

■ K.P. argues that the statute is vague and overbroad and does not afford notice of the type of conduct which is proscribed and is, therefore, unconstitutional on its face. We do not agree. C.R.S. 1963, 123-20-7(1)(d) provides in pertinent parts:

"The following shall be grounds for suspension or expulsion of a child from a public school during a school year:

. . . .

"(d) Behavior which is inimicable to the welfare, safety, or morals of other pupils."

The doctrines of vagueness and overbreadth originated in the criminal law. Because of the severe sanctions imposed following a criminal conviction, courts recognized the need to provide objective standards which would adequately inform the public of the type of behavior which was

proscribed. As a result, the courts require that the standard of conduct be set forth in the statutory language to prohibit government officials from exercising unfettered discretion. *Grayned v. City of Rockford,* 48 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); *Papachristou v. City of Jacksonville,* 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972); *Coates v. City of Cincinnati,* 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971); *Lanzetta v. New Jersey,* 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888 (1939); *Connally v. General Construction Co.,* 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1929).

▪ Although the doctrines of vagueness and overbreadth originated in the criminal law, the courts early recognized that it was neither the criminal nature of the conduct nor the penalty imposed which necessitated the rules, but rather the ability of the public to understand what was prohibited.

"It was not the criminal penalty that was held invalid, but the exaction of obedience to a rule or standard which was so vague and indefinite as really to be no rule or standard at all." *Small v. American Sugar Refining Co.,* 267 U.S. 233, 45 S.Ct. 295, 69 L.Ed. 589 (1925).

*See also Cramp v. Board of Public Instruction,* 368 U.S. 278, 82 S.Ct. 275, 7 L.Ed.2d 285 (1961). However, the extension of the vagueness and overbreadth doctrines has not resulted in a definitive test which is equally applicable to all statutory language. Substantial case law indicates that the degree of specificity required in setting forth the requisite standard in statutory language must be considered along with the severity of the sanction imposed. As the severity of the sanction is increased, the clarity of the standard of conduct prescribed must also increase. *See Winters v. New York,* 333 U.S. 507, 68 S.Ct. 665, 92 L.Ed. 840 (1948), and Amsterdam, *The Void for Vagueness Doctrine in The Supreme Court,* 109 U. Pa. L. Rev. 67 (1963).

Courts which have addressed themselves to the problem of interpreting statutory language dealing with student conduct under the vagueness and overbreadth doctrines have failed to develop any generally applicable test. *See Linwood v. Board*

*of Education, City of Peoria,* 463 F.2d 763 (7th Cir. 1972), *cert. denied,* 409 U.S. 1027, 93 S.Ct. 475, 34 L.Ed.2d 320 (1972) [permitting suspension or expulsion for "gross disobedience or misconduct"]; *Southern v. Board of Trustees for Dallas Independent School District,* 318 F. Supp. 355 (N.D. Tex. 1970), *aff'd. per curiam,* 461 F.2d 1267 (5th Cir. 1972) [disciplinary action based upon "incorrigible" conduct held valid]; *Banks v. Board of Public Instruction of Dade County,* 314 F. Supp. 285 (S.D. Fla. 1970), *appeal vacated,* 401 U.S. 988, 91 S.Ct. 1223, 28 L.Ed.2d 526 (1971), *aff'd. per curiam,* 450 F.2d 1103 (5th Cir. 1971) ["serious misconduct" held constitutionally sufficient]; *Soglin v. Kauffman,* 418 F.2d 163 (7th Cir. 1969) [suspension for "misconduct" held invalid under the vagueness doctrine]; and *Sullivan v. Houston Independent School District,* 333 F. Supp. 1149 (S.D. Tex. 1971) ["in the best interests of the school" held too vague].

However, in all of the cited cases, the courts have endeavored to balance the individual's loss of his interest in an education with the clarity of the challenged statutory language. In so doing, they have expressly recognized the importance of an education in modern society and the necessity of providing school authorities with the means to maintain an atmosphere conducive to learning.

■ When applied to the challenge presented in this case, and as we interpret C.R.S. 1963, 123-20-7(1)(d), the legislature has provided factors in sufficiently clear and definite language to apprise students of the type of conduct which is prohibited. In so deciding, we particularly note that the standard of conduct set forth in the statute is distinguishable in two decisive respects from comparable statutory language which has been held to be void. First, the statute focuses its prohibition only on conduct which is directed toward other pupils — a narrowed class of individuals. Second, the conduct proscribed is strictly limited to conduct which is hostile to welfare, safety, or morals and could not be utilized to prohibit all forms of socially unacceptable conduct.

As a result of the specificity of the statutory language, in

conjunction with the limited nature of the prohibited conduct, we hold that C.R.S. 1963, 123-20-7 (1)(d) is constitutional on its face.

## II.
## Sufficiency of the Hearing

K.P. argues that even if C.R.S. 1963, 123-20-7 (1)(d) is found to be constitutional, his expulsion was invalid because the hearing which he was granted did not provide sufficient procedural safeguards to satisfy the requirements of due process. In particular, he contends that the school district failed to extend the right to compulsory process and the right to have witnesses sworn and thereby deprived him of due process of law as required by the Fourteenth Amendment to the United States Constitution.

K.P. argues that he was denied the right to compulsory process on two separate occasions. He alleges that the first denial occurred when school officials refused to produce school records which he had requested prior to the hearing. However, the juvenile court found, as a matter of fact, that the requested records did not exist. Unless challenged, we are compelled to accept that finding as accurate. K.P. neither attacks that finding nor alleges that the requested school records do, in fact, exist, and yet he persists in his arguments that the failure to produce a document the record does not show even existed is reversible error. In our view, his argument is without merit.

K.P. contends that he was denied compulsory process on a second occasion when the school board refused to grant him the right to compel the attendance of witnesses in his behalf. However, the record reveals that he did not request the attendance of witnesses until the morning of the expulsion hearing. Such a request is not made in a timely manner. *Williams v. Zuckert,* 371 U.S. 531, 83 S.Ct. 403; 9 L.Ed.2d 486 (1963); *Brown v. Zuckert,* 349 F.2d 461 (7th Cir. 1965), *cert. denied,* 382 U.S. 998, 86 S.Ct. 588, 15 L.Ed.2d 486 (1966); and *Garcia v. Schwartz, supra.* Accordingly, the hearing officer's refusal to rule favorably on the request under these circumstances did not constitute a denial

of the right to compulsory process.

K.P.'s allegation that he was denied the right to have witnesses sworn fails for similar reasons. He argues that the hearing officer's failure to place each witness under oath denied him a fair hearing and requires reversal of the juvenile court decision. However, the record reveals that during the course of the hearing, K.P. never requested that an oath be administered and failed to object to the absence of an oath. Failure to make such a request or to enter an objection constitutes an implied waiver of the right. *Wilcoxon v. United States,* 231 F.2d 384 (10th Cir. 1956), *cert. denied,* 351 U.S. 943, 76 S.Ct. 834, 100 L.Ed. 1469 (1956). *See also Brenton State Bank v. Heckman,* 233 Iowa 682, 7 N.W.2d 813 (1943), and *Mettetal v. Hall,* 288 Mich. 200, 284 N.W. 698 (1939).

In addition, it should be noted that on appeal to the Board of Education, K.P. agreed that the hearing transcript would constitute the major portion of the evidence submitted for consideration. That agreement constitutes an express waiver of the hearing officer's failure to administer the oath to witnesses during the expulsion hearing.

We conclude that having waived both procedural safeguards, K.P. was not deprived of either compulsory process or the right to have witnesses sworn, and, therefore, that his expulsion hearing was procedurally proper.

### III.
### Suspension Without a Hearing

K.P. was initially suspended for five days following the fighting incident. Before the five days had expired, the superintendent extended the suspension period for an additional ten days. K.P. has argued that an extension without a hearing was improper.

In light of the subsequent hearing which resulted in K.P.'s expulsion from Place Junior High School, that issue is now moot, and we express no opinion regarding the validity of the ten-day extension. *See Stricklin v. Regents of the University of Wisconsin,* 297 F. Supp. 416 (W.D. Wis. 1969), *appeal dismissed,* 420 F.2d 1257 (7th Cir. 1970).

Accordingly, we affirm.