# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| S.K., | : |
|       Petitioner | : |
| | :   No. 984 C.D. 2024 |
|       v. | : |
| | :   Argued: April 8, 2025 |
| Pennsylvania Department of | : |
| Education (Professional Standards | : |
| and Practices Commission), | : |
|       Respondent | : |

BEFORE:   HONORABLE MICHAEL H. WOJCIK, Judge
              HONORABLE CHRISTINE FIZZANO CANNON, Judge
              HONORABLE LORI A. DUMAS, Judge

**OPINION BY**
**JUDGE DUMAS**                                    **FILED:  July 16, 2025**

S.K. petitions for review from the order entered by the Professional Standards and Practices Commission (Commission), suspending her teaching certificate under the Educator Discipline Act (Act).[1] S.K. contends that the Commission's adjudicatory framework violates the law and the Commission relied on inadmissible hearsay to find she posed a threat to students. We affirm in part, reverse in part, vacate in part, and remand.

## I. BACKGROUND[2]

S.K. was a special education teacher at the Wyoming Area School District. In 2023, she was charged with corruption of minors. The affidavit of

---

[1] Act of December 12, 1973, P.L. 397, *as amended*, 24 P.S. §§ 2070.1a-2070.18a. The Act's section numbers are distinct from "the sections provided in Purdon's Pennsylvania Statutes, which is an unofficial codification of Pennsylvania law." *Herold v. Univ. of Pittsburgh*, 329 A.3d 1159, 1166 n.1 (Pa. 2025). We refer to provisions of the Act "only by their Purdon's citation." *Id.*

[2] We state the facts in the light most favorable to the Department as the prevailing party. *See Cinram Mfg., Inc. v. Workers' Comp. Appeal Bd. (Hill)*, 975 A.2d 577, 583 (Pa. 2009); *Boguslawski v. Dep't of Educ.*, 837 A.2d 614, 616 n.2 (Pa. Cmwlth. 2003).

probable cause alleges she provided nicotine vapes, delta-8 tetrahydrocannabinol[3] gummies, and vodka to minor students. She also allegedly encouraged students to vandalize her ex-fiancé's home and later urged them to delete text messages about these incidents. A student reported S.K.'s conduct to a school social worker, prompting the administration to request a meeting with S.K. The affidavit directly quotes several text messages and references at least one photograph and video surveillance footage. S.K. was arrested, and she waived arraignment.

The Department of Education (Department) commenced disciplinary proceedings in 2024. S.K. admitted she was charged and requested a hearing.[4] At the hearing, the Department introduced the criminal complaint, which included the affidavit of probable cause, and docket. S.K. objected based on hearsay, reasoning that the documents' "contents . . . consist mostly of statements made outside of this proceeding that are being offered, in our opinion, to prove the truth of the matter asserted," *i.e.*, hearsay within hearsay. Notes of Testimony (N.T.), 5/13/24, at 13-14. In her view, the Department presented the "documents as the basis for . . . a factual finding that she poses a threat to the health, safety, or welfare of students." *Id.* at 14 (citation modified). S.K. contended that the Commission could not decide whether she posed a threat unless it accepted the factual allegations as true. *Id.* S.K. stressed that she "objected to hearsay that is not corroborated by any other evidence," which cannot support an agency finding of fact.[5] *Id.* at 16.

___

[3] Tetrahydrocannabinol "is the active ingredient of marijuana." *Commonwealth v. Jones*, 121 A.3d 524, 526 n.3 (Pa. Super. 2015).

[4] In this case, the hearing officer was not empowered to decide anything. Rather, the Commission directed the hearing officer to only hold an evidentiary hearing and certify the record. *See generally* 24 P.S. §§ 2070.13(c), 2070.14.

[5] Specifically, S.K. noted that she would not have objected "if the Department sought only to use these documents to prove that the charge occurred . . . . But we feel there's a fundamental evidentiary problem with using these statements to prove that the educator poses a threat. We don't think it's possible for the Commission to make a threat analysis based on this evidence

The Department countered that the documents were not hearsay because they were "not being offered for the truth of the matter" asserted. *Id.* at 14. In support, it emphasized that the Commission has consistently held "that the allegations underlying the criminal charges may serve as sufficient support for finding that the educator poses the requisite threat to justify" suspending the certificate. *Id.* at 15; *accord id.* at 8-9 (reiterating that the Department need only prove that the "alleged conduct support[s] a finding of threat to students").[6] The hearing officer overruled the objection and admitted the documents. *Id.* at 16-17.

Neither party presented any witnesses before resting. The hearing officer did not bar S.K. from rebutting the Department's case. *Id.* at 18. Both parties filed post-hearing briefs that addressed the admission of the indictment and proposed findings of fact. *See, e.g.*, Dep't's Br., 6/3/24, at 2 (maintaining that the allegations alone established that S.K. posed a threat); S.K.'s Br., 6/14/24, at 11 (arguing "the complaint and affidavit indisputably constitute uncorroborated double hearsay"). The Commission heard oral arguments and suspended S.K.'s certificate.

The Commission held that the affidavit was not offered for the truth of its contents because the "allegations underlying the" charges support "a finding that the educator poses" a threat. Comm'n Op., 7/15/24, at 11. "The truth of those allegations is immaterial" because the Commission was making "no assertion about the educator's guilt or innocence of the charges alleged in the indictment." *Id.* In

without first accepting the allegations for their truth. So that's the basis of the hearsay objection." N.T. at 14.

[6] For completeness, the Department argued as follows: "The court docs are not hearsay. They're not being offered for the truth of the matter. They're simply offered as proof of the reason why [S.K.] was criminally charged. It is not offered for the truth of the statements contained within the affidavit. The Commission has repeatedly stated that the allegations underlying the criminal charges may serve as sufficient support for finding that the Educator poses the requisite threat to justify the suspension of an Educator's certificate pending the disposition of the criminal charges. . . ." N.T. at 14-15. For ease, our references to an "affidavit" also include the criminal complaint.

3

sum, the Commission held that because the affidavit "was not offered for the truth of the matter asserted, it cannot be characterized as hearsay." *Id.*

The Commission rendered 17 findings of fact, all but 4 of which were based on the affidavit. *Id.* at 3-6 (qualifying each such finding with the phrase, "According to the affidavit" and, for example, directly quoting text messages). The Commission noted that S.K. failed to present any evidence or testimony that she did not pose a threat. *Id.* at 10. Based on its findings, the Commission held that the Department proved that S.K. poses a threat to students. *Id.* at 6. The Commission explained that "an indictment alone can satisfy both prongs of the Department's burden because the indictment is an 'objective fact' that must be based upon probable cause." *Id.* at 12. Combined with S.K.'s waiver of a preliminary hearing, the Commission reasoned that if it accepted the factual allegations as true, S.K. was unfit to protect her students. *Id.* at 8-9. S.K. timely appealed.

## II. ISSUES

First, S.K. contends that the Commission's legal framework improperly removes the Department's burden to prove that S.K. poses a threat to students. S.K.'s Br. at 4. Second, S.K. alleges the Commission erred by relying on hearsay statements within the indictment to prove she posed a threat to students. *Id.*

## III. DISCUSSION[7]

### A. No Rebuttable Presumption Exists

In support of her first issue, S.K. argues that the Commission's

---

[7] We must affirm the agency's order unless we conclude that it violates the petitioner's constitutional rights, violates the law, or any fact necessary to the order is unsupported by substantial evidence. 2 Pa.C.S. § 704. "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. . . . The rule of substantial evidence is one of fundamental importance and is the dividing line between law and arbitrary" agency determinations. *Pa. State Bd. of Med. Ed. & Licensure v. Schireson*, 61 A.2d 343, 346 (Pa. 1948) (citation modified).

4

framework for implementing the Act's hearing shifted the burden of proof to her to disprove that she posed a threat to students. *Id.* at 9. S.K. reasons that at the hearing, the Department was required to "adduce evidence" to prove she was a threat. *Id.* at 9-10. S.K. faults the Commission for creating a "rebuttable presumption based solely on the existence of the indictment." *Id.* at 11. In her view, the indictment is not evidence she poses a threat, and thus, the Commission essentially required S.K. "to prove she is not a threat." *Id.* at 12. In support, she reasons that the Act requires a meaningful hearing, which cannot occur if the Commission allows a rebuttable presumption in favor of "prosecutorial convenience." *Id.* at 12-13.

S.K. also argues that she was denied the right to be heard under the Commission's framework. *Id.* at 13 (citing 2 Pa.C.S. § 504).[8] By accepting the indictment into evidence, in S.K.'s view, the Commission never gave her "an opportunity to challenge, on the record, the credibility of the allegations" within the affidavit. *Id.* at 15-16. S.K. reasons the hearing was invalid because the Commission effectively "barred [her] from challenging the decisive factual issue." *Id.* at 14.[9]

In response, the Department highlights that S.K. conceded she was indicted. Dep't's Br. at 13. The Department adds that S.K. was not required to disprove the factual allegations but was required to rebut the Department's evidence that S.K. posed a threat to students. *Id.* at 27.

The Act protects "children from the alleged perpetrator during the

---

[8] "No adjudication of a Commonwealth agency shall be valid as to any party unless he shall have been afforded reasonable notice of a hearing and an opportunity to be heard. . . ." 2 Pa.C.S. § 504.

[9] Although S.K. raises the following argument for her second issue, it more appropriately dovetails with her first issue. S.K. argues she was denied her procedural due process rights, including the right to cross-examine witnesses. S.K.'s Br. at 24-28. The Department maintains S.K. waived this claim and that she received adequate procedural due process through notice and a hearing. Dep't's Br. at 28-35. The Department also argues the process complies with substantive due process, which S.K. does not challenge. *Id.* at 35-40; S.K.'s Reply Br. at 9-10.

5

pendency of the litigation so as not to allow them to be subject to the crimes involved." *Petron v. Dep't of Educ.*, 726 A.2d 1091, 1095 (Pa. Cmwlth. 1999) (*en banc*) (Pellegrini, J., concurring). Under a prior version of the Act, the Commission could suspend a teacher's certificate based solely on "an indictment for a crime involving moral turpitude." *Id.* at 1094 (citing 24 P.S. § 2070.5(a)(11), which was deleted by the Act of Dec. 1, 2013, P.L. 1205). In *Petron*, the teacher had argued that due process required a meaningful hearing to consider whether the charged conduct "when measured by the standards applicable to all teachers," justified suspension. *Id.* The *en banc* Court agreed that the teacher was entitled to the relief of a prompt, post-deprivation hearing. *Id.* & n.10.

Subsequently, the Act was amended to generally permit a hearing. *See* 24 P.S. § 2070.5(a)(11.1) (citing, *inter alia*, 24 P.S. § 2070.9b). Under section 2070.9b, the Commission must immediately suspend a teacher's certificate when the Department proves two factors: (1) an indictment for an enumerated offense; and (2) the teacher "poses a threat to the health, safety or welfare of students" in schools. 24 P.S. §§ 2070.9b(a)(1), 2070.13(c)(2); 22 Pa. Code § 233.120(c).[10] The Department proves the first factor with the indictment. 24 P.S. § 2070.9b(a)(1); 22 Pa. Code § 237.9(d)-(e). The Commission examines whether the indictment includes an offense

---

[10] The Commission must direct "the department to immediately suspend the certificate and employment eligibility of an educator indicted for a crime set forth in [24 P.S. § 1-111], or the attempt, solicitation or conspiracy to commit any crime set forth in that section if the commission, after notice and hearing if requested, determines that the educator poses a threat to the health, safety or welfare of students or other persons in the schools of this Commonwealth in accordance with" various conditions. 24 P.S. § 2070.9b(a)(1); *accord* 22 Pa. Code § 233.120(c).

The Act mandates that the "burden of proof shall be on the [D]epartment, which shall act as prosecutor, to establish by a preponderance of the evidence that grounds for discipline exist." 24 P.S. § 2070.13(c)(2). It follows that the Commission, in its adjudicatory role, acts as a neutral arbiter and not as the prosecutorial arm of the Department. *Id.*; 24 P.S. §§ 2070.9(d), 2070.18(a).

6

listed in 24 P.S. § 1-111(e)(1)-(3).  24 P.S. § 2070.9b(a)(1); 22 Pa. Code § 237.9(c).[11]

The Department proves the second factor by presenting "specific facts and circumstances" that demonstrate the teacher poses a threat under the unique circumstances of the case.  24 P.S. § 2070.9b(a)(1); *S.E.N. v. Dep't of Educ.*, 324 A.3d 686, 698 (Pa. Cmwlth. 2023).  The unique circumstances of the case may require the Commission to resolve whether the teacher's alleged conduct has a sufficient "nexus to the health, safety, or welfare of students or others in schools."  *S.E.N.*, 324 A.3d at 698.  The teacher may rebut the Department's evidence with her own evidence and witnesses that she does not pose a threat.

Rebutting evidence differs from a rebuttable presumption, which is a legislative or "judicial declaration" that establishing one fact requires assuming a second fact exists.  *Waters v. New Amsterdam Cas. Co.*, 144 A.2d 354, 356 (Pa. 1958).  Once a presumption applies, the burden shifts to the defendant to introduce credible evidence; if she fails to rebut with credible evidence, the presumed fact is established as a matter of law.  *Id.*; *accord City of Pittsburgh v. Workers' Comp. Appeal Bd. (Robinson)*, 67 A.3d 1194, 1204 (Pa. 2013).[12]  For example, evidence of unexplained child abuse creates a *prima facie* presumption of abuse by the caretaker that shifts

---

[11] 22 Pa. Code § 237.9 addresses crimes involving moral turpitude, which is defined as any offense listed at 24 P.S. § 1-111(e)(1), which includes corruption of minors and endangering the welfare of children.  22 Pa. Code § 237.9(c)(1).  Thus, the Department must present an indictment that includes a crime involving moral turpitude, and the Code generally requires the Commission to accept a copy of such indictment.  22 Pa. Code § 237.9(d)-(e) (defining indictment to include "a criminal complaint, criminal information or other similar document"); *see generally Gilbert v. Homar*, 520 U.S. 924, 934 (1997) (explaining that when "an independent third party has determined that there is probable cause to believe the [state] employee committed a serious crime," "the state employer's decision to suspend the employee is not baseless or unwarranted" (citation modified)).

[12] *See generally 500 James Hance Ct. v. Pa. Prevailing Wage Appeals Bd.*, 33 A.3d 555, 576 (Pa. 2011); *Waddle v. Nelkin*, 515 A.2d 909, 912 (Pa. 1986) (plurality) ("Presumptions may be looked on as the bats of the law, flitting in the twilight, but disappearing in the sunshine of actual facts." (citation modified)).

the burden to the caretaker to rebut. *E.M. v. Dep't of Hum. Servs.*, 191 A.3d 44, 52 (Pa. Cmwlth. 2018) (discussing 23 Pa.C.S. § 6381(d)).[13]

Instantly, the Act does not legislate any rebuttable presumption. Under the Act, to suspend S.K.'s teaching certificate immediately, the Department must present competent *evidence* that S.K. poses a threat to students. *See* 24 P.S. §§ 2070.9b(a)(1), 2070.13(c)(2). Unlike 23 Pa.C.S. § 6381(d), which legislates a rebuttable presumption when the agency presents evidence of certain child abuse, the Act does not state that when the Department presents evidence of the *indictment*, that is *prima facie* evidence that S.K. poses a threat, which S.K. must rebut. *See E.M.*, 191 A.3d at 52; *Waters*, 144 A.2d at 356. Because the Act does not impose a rebuttable presumption and requires the Department to present evidence that S.K. poses a threat, we reject S.K.'s argument. To the extent S.K. assails the allegations within the indictment, we address that below.

## B. Hearsay, Right of Confrontation, and Right to Cross-Examine[14]

### 1. Arguments

For S.K.'s second issue, the parties dispute whether the Department may only rely on the allegations within the indictment as factual support that S.K. poses a threat to students. S.K. stresses that she timely objected to the statements within the indictment as hearsay. S.K.'s Br. at 16-18 (discussing *Walker v.*

---

[13] "Evidence that a child has suffered child abuse of such a nature as would ordinarily not be sustained or exist except by reason of the acts or omissions of the parent or other person responsible for the welfare of the child shall be *prima facie* evidence of child abuse by the parent or other person responsible for the welfare of the child." 23 Pa.C.S. § 6381(d).

[14] We review an agency's "admission or exclusion of evidence in an administrative proceeding" for an abuse of discretion, which includes an error of law. *D'Alessandro v. Pa. State Police*, 937 A.2d 404, 410 (Pa. 2007) (plurality) (*D'Alessandro II*); *Am. C.L. Union of Pa. v. Pa. State Police*, 232 A.3d 654, 662-63, 665 (Pa. 2020). We may rely on nonconflicting caselaw that predates the rules of evidence, which were enacted in 1998. *Commonwealth v. Aikens*, 990 A.2d 1181, 1185 n.2 (Pa. Super. 2010).

*Unemployment Comp. Bd. of Review*, 367 A.2d 366 (Pa. Cmwlth. 1976)). The *Walker* Court held that hearsay "evidence in administrative proceedings, properly objected to, is not competent evidence to support a finding of fact." *Id.* at 17 (paraphrasing *Walker*). S.K. argues that because the indictment contains "out-of-hearing statements of both the police officer and (unnamed) witnesses referenced throughout," such statements "are undoubtedly hearsay." *Id.* at 18. Because the Commission relied on inadmissible hearsay, S.K. asserts the Commission's finding that she poses a threat is flawed. *Id.* at 22-23.

The Department counters that the indictment alone can establish that S.K. poses a threat because the indictment "is an 'objective fact' that must be based upon probable cause to believe that" S.K. committed the alleged criminal acts. Dep't's Br. at 20-22 (citing, *inter alia*, *Dep't of Educ. v. Minnich*, No. DI-16-031 (filed May 26, 2016) (*Minnich I*), slip op. at 3 n.3, *aff'd*, *S.D.M. v. Dep't of Educ. (Pro. Standards & Pracs. Comm'n)* (Pa. Cmwlth., No. 1011 C.D. 2016, filed May 22, 2017) (*Minnich II*) (sealed), *S.E.N.*, 324 A.3d 686, and *C.A.R. v. Dep't of Educ. (Pro. Standards & Pracs. Comm'n)* (Pa. Cmwlth., No. 345 C.D. 2023, filed July 12, 2024) (sealed)). The Department reiterates the criminal allegations that S.K. provided illegal substances to minors and encouraged vandalism, which the Department argues called "into question her ability to protect the health, safety and welfare of students." *Id.* at 23. In the Department's view, S.K.'s alleged actions, "if true," posed a threat to students. *Id.* at 25.[15] The Department emphasizes that S.K. rested

---

[15] *Cf.* N.T. at 14-15 (reflecting the Department's argument that the indictment "is not offered for the truth of the statements contained within the affidavit" of probable cause). Because hearsay is an out-of-court statement presented for the truth of the matter asserted, the Department's "if true" qualifier is somewhat troubling. Any factual allegations underlying a criminal offense "if true" may be proof that the teacher presently poses a threat.

without calling any witnesses or presenting any evidence in rebuttal. *Id.* at 32-33.[16]

## 2. Legal Background

The Department must prove the teacher "poses a threat to the health, safety or welfare of students or other persons" in schools. 24 P.S. § 2070.9b(a)(1). This determination presents a mixed question of fact and law requiring fact-intensive analysis. *See J.S. ex rel. M.S. v. Manheim Twp. Sch. Dist.*, 263 A.3d 295, 305 n.11 (Pa. 2021). A reviewing court "shall affirm . . . unless it shall find that the adjudication [violates] the constitutional rights of the appellant, or is not in accordance with law, or that the provisions of [2 Pa.C.S. §§ 501-508] have been violated in the proceedings before the agency, or that any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence." 2 Pa.C.S. § 704.

In agency proceedings involving "inherent and indefeasible rights," agencies must "afford heightened evidentiary protection," which may require applying standard judicial hearsay rules. *D'Alessandro II*, 937 A.2d at 412. However, a teaching certification is an occupational privilege within a regulatory framework, and not a fundamental right. *S.E.N.*, 324 A.3d at 699-700; *see Nixon v. Commonwealth*, 839 A.2d 277, 287-88 (Pa. 2003). The Department's temporary suspension of a teaching certificate does not result in a permanent deprivation of any fundamental right, unlike the permanent loss of a right to bear arms, lifetime listing in the child abuse registry, or termination of parental rights. *See S.E.N.*, 324 A.3d at 700-01; *D'Alessandro II*, 937 A.2d at 410; *A.Y. v. Dep't of Pub. Welfare*, 641 A.2d

---

[16] In other words, the Department argues the indictment is not impermissible hearsay because it is used only to prove that S.K. was indicted. Yet, the Department also argues that the criminal allegations, *i.e.*, the factual averments substantiating criminal offenses, may be used to factually prove that S.K. poses a threat to students. *Accord* Comm'n Op. at 11-12. The Department's citation to *Minnich I* in its brief did not reflect its subsequent history, *i.e.*, this Court decided *Minnich I* on appeal in *Minnich II*.

1148, 1150 (Pa. 1994); *In re A.J.R.-H.*, 188 A.3d 1157, 1179 (Pa. 2018). Thus, this Commission proceeding is not bound by the standard hearsay rules in judicial proceedings and is subject to 2 Pa.C.S. § 505.

Generally, "agencies shall not be bound by technical rules of evidence at agency hearings, and all relevant evidence of reasonably probative value may be received."[17] 2 Pa.C.S. § 505. "With regard to the use of hearsay in administrative proceedings, it has long been established that hearsay evidence, properly objected to, is not competent evidence to support a finding of the" agency. *Ives v. Bureau of Pro. & Occupational Affs.*, 204 A.3d 564, 574 (Pa. Cmwlth. 2019) (citation modified and quoting *Walker*, 367 A.2d at 370).[18] "Hearsay evidence, admitted without objection, will be given its natural probative effect and may support a finding of the [agency], if it is corroborated by any competent evidence in the record, but a finding of fact based solely on hearsay will not stand." *Id.* (citation modified). In other words, an agency may not rely on unobjected-to, uncorroborated hearsay as its only support for a finding of fact—such evidence is not "substantial and legally credible evidence." *Schireson*, 61 A.2d at 346 (citation modified).

Hearsay "means a statement that (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Pa.R.E. 801 (citation modified). A

---

[17] Rules of evidence that apply to agency proceedings include rules that govern personal knowledge, opinion testimony by lay witnesses, and expert testimony. *Gibson v. Workers' Comp. Appeal Bd. (Armco Stainless & Alloy Prods.)*, 861 A.2d 938, 947 (Pa. 2004); Pa.R.E. 101 cmt.

[18] *Ives* stated that the "strictures on the use of unobjected to hearsay are known as the '*Walker* rule.'" *Ives*, 204 A.3d at 574 (rejecting the agency's invocation of *Walker* because the litigant had objected based on hearsay). Other cases, however, more broadly define the "*Walker* rule" as encompassing the guidelines for objected-to *and* unobjected-to hearsay. *See, e.g.*, *Rox Coal Co. v. Workers' Comp. Appeal Bd. (Snizaski)*, 807 A.2d 906, 915 (Pa. 2002). We do not resolve any apparent discrepancy because under either definition, the Commission admitted the indictment over the teacher's hearsay objection.

statement, like a police report or affidavit of probable cause, may contain "multiple levels of hearsay. Where a hearsay document contains additional hearsay within it (often referred to as 'double hearsay'), each level of hearsay must satisfy an exception to the rule prohibiting the admission of hearsay evidence." *In re A.J.R.-H.*, 188 A.3d at 1161, 1169 (citations omitted).

Absent an exception, hearsay evidence is inadmissible. *Pa. State Police v. 139 Horseshoe Corp.*, 629 A.2d 290, 293 (Pa. Cmwlth. 1993) (*Horseshoe*). It is inadmissible because "hearsay statements lack guarantees of trustworthiness and cannot be tested by cross-examination," and due process requires "that a party be afforded a reasonable opportunity to challenge . . . the reliability of [such] adverse evidence" absent a hearsay exception equivalent to "the guarantees of trustworthiness . . . from a declarant's presence in court." *Id.* (citation modified). One hearsay exception provides that a "copy of a record authenticated as provided in [42 Pa.C.S. § 6103] disclosing the existence or nonexistence of facts which have been recorded pursuant to an official duty . . . shall be admissible as evidence of the existence or nonexistence of such facts, unless the sources of information or other circumstances indicate lack of trustworthiness." 42 Pa.C.S. § 6104(b).[19]

In sum, when an adversary objects to evidence based on hearsay, the evidence cannot support an agency's finding of fact unless the evidence falls within a recognized hearsay exception. If a proponent successfully establishes that

---

[19] 42 Pa.C.S. § 6103(a) states: "An official record kept within this Commonwealth by any court, magisterial district judge or other government unit, or an entry therein, when admissible for any purpose, may be evidenced by an official publication thereof or by a copy attested by the officer having the legal custody of the record, or by that officer's deputy, and accompanied by a certificate that the officer has the custody." 42 Pa.C.S. § 6103(a). This exception can be invoked in agency proceedings subject to 2 Pa.C.S. § 505 or more formal judicial hearsay rules. *See D'Alessandro II*, 937 A.2d at 412. If the proponent presents an official record at an agency proceeding, and an adversary objects based on hearsay, then the proponent may invoke 42 Pa.C.S. § 6104(b) to rehabilitate the evidence.

objected-to hearsay falls within a recognized hearsay exception, *e.g.*, 42 Pa.C.S. § 6104(b), then the evidence becomes admissible hearsay that can support an agency's finding of fact without additional corroboration. When hearsay evidence is admitted without objection, such evidence must be corroborated by competent evidence to support an agency's finding of fact.[20]

In *D'Alessandro II*, our Supreme Court addressed whether a police report could be admitted as an official record under 42 Pa.C.S. § 6104(b) to prove domestic violence was an element of the appellee's conviction. *D'Alessandro II*, 937 A.2d at 414. The Pennsylvania State Police (PSP) had denied the appellee's gun license application based on a conviction involving domestic violence. *Id.* at 406.

At the administrative appeal hearing, PSP introduced a police report that (1) listed the same address for the appellee and the victim, and (2) contained the disputed statement that the appellee had hit his "live in girlfriend."[21] *Id.* at 407. The appellee objected to the report as hearsay and the statement as double hearsay, but the administrative law judge (ALJ) overruled the objections and admitted the report as a certified record. *Id.* Significantly, the appellee testified at the hearing to a sexual relationship with the victim while denying they cohabitated. *Id.* at 407-08.

Our Supreme Court held that the police report was admissible under 42 Pa.C.S. § 6104(b). *Id.* at 414. The Court applied two indicia of trustworthiness: (1)

---

[20] The disputed evidence may not even fall within the definition of hearsay. For example, a declarant's question typically is a request for information and thus, not a statement presented for the truth of the matter asserted. Again, to avoid any misunderstanding, a tribunal's ruling that evidence is admissible hearsay does not mean the tribunal must be persuaded by such evidence.

[21] Specifically, PSP had introduced the appellee's criminal record, which "included a police report, produced at [the administrative hearing] by John Schneider, a witness employed by the PSP who received the report from the Pittsburgh Police Department." *D'Alessandro II*, 937 A.2d at 407. The disputed statement follows in full: "Upon arrival, Actor meet [sic] us at the door and stated that he had called the medics because he hit the victim, his live in girlfriend, knocking her to the floor, and that she was unconscious." *Id.* at 416 (Saylor, J., concurring) (alteration in original).

13

the report contained no obvious errors; and (2) nothing indicated the disputed statement "originated from an unreliable source." *Id.* Regarding the latter factor, the Court reasoned it was logical to assume the statement was either confirmed by the appellee or the victim, or observed by the investigating officer "upon viewing personal items in the home."[22] *Id.* The Court held the disputed statement was independently admissible under 42 Pa.C.S. § 6104(b).[23] *Id.*

The *D'Alessandro II* concurrence emphasized that double hearsay requires separate exceptions for each level. *Id.* at 416 (Saylor, J., concurring). When a police report contains an out-of-court statement by a declarant other than the report's author, that statement constitutes double hearsay and needs an independent hearsay exception. *Id.* As noted therein, the appellee's statement was an admission by the appellee as a party opponent. *Id.*

Importantly, our Supreme Court criticized this Court for conflating "evidentiary review with sufficiency review." *Id.* at 409, 415. Previously, on appeal to this Court, we had parsed the police report and held that "only statements in the police report relevant to the assault could be deemed trustworthy, namely, statements pertaining to [the] appellee injuring the victim and the addresses listed for both

---

[22] Precisely, it was reasonable "to assume that the investigating police officer would need to probe the relationship of the parties, and their addresses, in order to collect information for charging decisions, for providing notice, etc. Of course, it is possible that the police officer made an assumption about [the] appellee's relationship with the victim and . . . he made assumptions about the parties' addresses. But there is no proof of that, nor is there reason to believe that the police officer did so given the information that the officer was required to collect in order to conduct a thorough investigation. Lastly, there is no concern that the police officer might have purposefully misrepresented things to bolster a firearms licensing case against appellee . . . ." *D'Alessandro II*, 937 A.2d at 414.

[23] Although the appellee had raised a double hearsay argument below, the appellee did not reraise it before our Supreme Court. *D'Alessandro II*, 937 A.2d at 415 n.10; *but see id.* at 415 (Saylor, J., concurring) (crediting the appellee's double hearsay argument). Nevertheless, the lead opinion agreed with the concurrence's analysis of double hearsay. *Id.* at 415 n.10.

14

individuals." *Id.* at 408. However, "any reference in the report to the victim being appellee's 'live in girlfriend'" was "suspect" because it was "not clear that it was an official duty of the police officer investigating the assault to make the factual determination of whether or not [the appellee] and the victim cohabitated . . . ." *Id.* (citation modified). We reasoned that the "facts in the police report are not admissible under 42 Pa.C.S. § 6104(b) for the purpose of attempting to establish" cohabitation. *Id.* (citation modified). After disregarding the police "report's reference to the victim being appellee's 'live in girlfriend,'" this Court held that PSP failed to prove the appellee committed a crime of domestic violence that would disqualify him from a gun license, and reversed PSP. *Id.*

Our Supreme Court rejected this Court's reversal, holding that the proper remedy for inadmissible evidence was a "remand for a new hearing without the prohibited evidence." *Id.* at 410. The *D'Alessandro II* Court distinguished between admissibility and sufficiency, finding that even without the disputed "live in girlfriend" statement, sufficient evidence supported the domestic violence finding because the appellee had testified about his sexual relationship with the victim and the police report listed the same address for the parties. *Id.* at 414. Our Supreme Court concluded that the disputed statement was both admissible and unnecessary for the tribunal to find they were cohabitating. *Id.* at 415. Substantial competent evidence existed supporting PSP's denial of a gun license for appellee. *Id.*

### 3. Discussion

In this section, we address three questions: whether (1) the affidavit of probable cause itself constitutes hearsay; (2) the affidavit itself is admissible under the official records exception at 42 Pa.C.S. § 6104(b); and (3) the double hearsay within the affidavit requires separate exceptions.

First, we hold that the affidavit of probable cause unquestionably constitutes hearsay (and itself contains double hearsay). The Department, somewhat confusingly, contends otherwise, arguing that because it was "not being offered for the truth of the matter" asserted, it was not hearsay. Dep't's Br. at 14. However, the Department also argues that the teacher's alleged actions, "if true," pose a threat to students. *Id.* at 25 (failing, apparently, to distinguish between the affiant's out-of-court statement, and the double hearsay within the affiant's statement). The Commission similarly reasoned that if it accepted the double hearsay as true, the teacher was no longer fit to protect students. Comm'n Op. at 8-9.

Respectfully, the Department's contention necessarily requires that the factfinder believe the following. First, the affidavit of probable cause is a trustworthy out-of-court statement presented for the truth of the matter asserted, *i.e.*, the affiant faithfully recorded her personal knowledge under an official duty. Second, the factual allegations within the affidavit (as recorded by the affiant), *e.g.*, S.K. provided substances to minors and encouraged vandalism, were also presented for the truth of the matter asserted. This is the textbook definition of hearsay (and hearsay within hearsay) under Pa.R.E. 801. The Commission erred by admitting the affidavit based on the Department's argument that it was not hearsay.[24]

Because S.K. correctly objected to the affidavit as hearsay, it is not competent to support any Commission finding of fact absent an exception. *See Ives*, 204 A.3d at 574. However, we may affirm the Commission on other grounds, including exceptions to the hearsay rule, such as the official records exception. *See White v. Workers' Comp. Appeal Bd.*, 666 A.2d 1128, 1131 n.6 (Pa. Cmwlth. 1995).[25]

---

[24] To be clear, we reject the Department's argument that the indictment is not hearsay. *See also* Dep't's Br. at 20-22; Comm'n Op. at 3-6; *cf. S.E.N.*, 324 A.2d at 698 (explaining that not every alleged crime necessarily proves that the teacher poses a threat).

[25] *White*, in support, cited to *Rhoads v. Lancaster Parking Authority*, 520 A.2d 122, 131 (Pa.

Second, we examine whether the affidavit itself qualifies under the official records exception to hearsay at 42 Pa.C.S. § 6104(b). Specifically, we address two indicia of trustworthiness: whether (1) the affidavit contains obvious errors; and (2) anything indicates that the disputed evidence was from an unreliable source. *See* 42 Pa.C.S. § 6104(b); *D'Alessandro II*, 937 A.2d at 414. Upon review, we perceive no obvious errors or indication that the affiant was unreliable. *See D'Alessandro II*, 937 A.2d at 414. Akin to the *D'Alessandro II* officer contemporaneously memorializing the appellee's statement in the police report, the instant affiant appears to have faithfully recorded her personal knowledge from interviews she conducted with witnesses and victims.[26] *See id.* The affidavit itself, as an out-of-court statement presented for the truth of the matter asserted, falls within the hearsay exception at 42 Pa.C.S. § 6104(b). We affirm the Commission's decision to admit the affidavit itself on other grounds. *See White*, 666 A.2d at 1131 n.6.

Third, we address the double hearsay in the affidavit. *D'Alessandro II* addressed double hearsay: the disputed statement made by the appellee within the police report, which characterized the victim as the appellee's "live in girlfriend." Although the appellee had objected based on double hearsay before the ALJ, he failed to preserve his argument before our Supreme Court. *D'Alessandro II*, 937 A.2d at 415 n.10. Nevertheless, the truthfulness of the appellee's out-of-court

Cmwlth. 1987), which affirmed a trial court—not an agency—on other grounds. *See generally* Justice Thomas G. Saylor, *Right for Any Reason: An Unsettled Doctrine at the Supreme Court Level and an Anecdotal Experience with Former Chief Justice Cappy*, 47 Duq. L. Rev. 489, 490 n.2 (2009) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 88, 95 (1943), as "applying the converse rule in appellate review of orders of administrative agencies, *i.e.*, that federal courts will not affirm agency decisions based upon reasoning not considered by the agency"). Justice Saylor also suggested that "the right-for-any-reason doctrine should not be applied rotely. Rather, in light of the prudential character of the principle, the reviewing court must exercise care in its application to ensure fundamental fairness." *Id.* at 492 n.10 (citation modified).

[26] Section 6104(b) suggests that the burden is on S.K. to establish the affidavit lacks "trustworthiness." We do not address this issue.

17

statement (memorialized within the police report—also an out-of-court statement) was corroborated by both the appellee's own testimony at the agency hearing and other evidence within the same police report, such as, *e.g.*, the same address listed for both the appellee and the victim. *See id.* at 414. Further, the lead opinion agreed that the appellee's statement was an admission of a party opponent. *Id.* at 415 n.10.

By contrast, the instant affidavit contains numerous out-of-court statements—factual allegations from witness interviews and text messages—that purport to prove the alleged criminal offenses. S.K. also preserved her double hearsay argument, unlike the *D'Alessandro II* appellee. Because the Commission admitted the double hearsay as non-hearsay, the Commission did not address any exception. *See Horseshoe*, 629 A.2d at 293; *A.J.R.-H.*, 188 A.3d at 1169; *D'Alessandro II*, 937 A.2d at 416 (Saylor, J., concurring). As a result, the Commission rendered 14 findings of fact, each qualified with "according to the affidavit." *See, e.g.*, Comm'n's Op. at 3-6 (finding "according to the affidavit, [S.K.] sent a group text message that stated [direct quote of text omitted]" (citation modified)).

Because of the Commission's erroneous ruling, the Commission judged the evidence solely "through the prism provided by the" Department. *Cf. A.Y.*, 641 A.2d at 1152. Akin to the agency in *A.Y.*, the Department was "able to justify" suspending S.K.'s certificate without producing any independent corroborative evidence, such as, perhaps, the video surveillance. *Cf. id.* Respectfully, permitting the Department to introduce double hearsay without any exception removes too much of the Department's prosecutorial burden. *Cf. id.* Although we affirm the Commission's decision to admit the affidavit itself on other grounds under 42

Pa.C.S. § 6104(b), we hold that the admission of the double hearsay was in error.[27]

We further reject the Department's reliance on *S.E.N.* and *Minnich II*, as we explicitly declined to address whether an indictment alone could satisfy the Department's burden precisely because additional corroborative evidence existed in those cases. *See S.E.N.*, 324 A.3d at 697; *Minnich II*, slip op. at 12. Neither case decided whether the Commission could rely solely on an indictment to prove the teacher poses a threat to students. *See S.E.N.*, 324 A.3d at 695, 697; *Minnich II*, slip op. at 12. *C.A.R.* is a non-precedential decision that does not bind this Court. *See* Pa.R.A.P. 126.[28]

Having determined that the Commission erroneously admitted double hearsay, we must identify the proper remedy. When an agency relies on inadmissible evidence, ordinarily, the appropriate remedy is remand for a new hearing without the prohibited evidence, rather than outright reversal. *D'Alessandro II*, 937 A.2d at 410 (citing *Commonwealth v. Conklin*, 897 A.2d 1168, 1175 n.12 (Pa. 2006), but holding, nevertheless, that the double hearsay was admissible on other grounds). However, we cannot heed our Supreme Court's suggestion to remand without the prohibited evidence. First, unlike the appellee in *D'Alessandro*, the teacher preserved her double hearsay argument for appellate review. Second, the Commission admitted the evidence as non-hearsay and thus, did not address any hearsay exceptions. Accordingly, we must remand for a hearing at which the Department must invoke

---

[27] Even if the teacher did not object to the double hearsay, the record reflects no corroboration. *Cf. D'Alessandro II*, 937 A.2d at 414 (noting this Court "curiously" disregarded the appellee's own corroborative testimony that he had a sexual relationship with the victim).

[28] We leave for another day the issue of the minimum quantum of evidence that the Department must present in order to sustain its burden of proof that the teacher poses a threat. *See Brown v. Dep't of Justice*, 715 F.2d 662, 668 (D.C. Cir. 1983). We need not address whether (1) a defendant's waiver of a preliminary hearing, or (2) the magistrate district judge's decision addressing probable cause is a "fact" proving the teacher poses a threat. Nothing in our decision bars the Department from pursuing other administrative remedies.

the exceptions to the double hearsay it seeks to present, and then the Commission will rule. The Commission's findings must comply with 2 Pa.C.S. § 704.

## IV. CONCLUSION

Initially, we distinguish between the indictment as a document and the truth of the statements contained within it. We affirm admission of the indictment itself as an official record under 42 Pa.C.S. § 6104(b), but reverse admission of the double hearsay. We vacate the Commission's order suspending the teacher's license. We remand for a new hearing at which the Department may continue to rely on the indictment to establish the teacher was charged with an enumerated offense under 24 P.S. § 1-111. For each double hearsay within the indictment the Department wishes to present, it must invoke an exception, and the Commission must rule. We therefore affirm in part, reverse in part, vacate in part, and remand for a new hearing.


_____

**LORI A. DUMAS, Judge**

20

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

S.K.,                                    :
        Petitioner              :
                                     :    No. 984 C.D. 2024
        v.                      :
                                     :
Pennsylvania Department of               :
Education (Professional Standards        :
and Practices Commission),               :
        Respondent             :

## **O R D E R**

AND NOW, this 16th day of July, 2025, we AFFIRM the order entered on July 15, 2024, by the Professional Standards and Practices Commission (Commission), only to the extent the Commission overruled the hearsay objection to the indictment itself. We REVERSE the order to the extent the Commission admitted, as non-hearsay, the double hearsay within the indictment. We VACATE the order to the extent the Commission immediately suspended Petitioner's license. We REMAND for proceedings consistent with this decision.

Jurisdiction relinquished.


                                  **LORI A. DUMAS, Judge**